UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF MINNESOTA

| | |
|---|---|
| ERIC VAN DAM,<br><br>  Plaintiff,<br><br>v.<br><br>EAST METRO ASC LLC DBA HIGH POINTE SURGERY CENTER; and, DOES 1-10,<br><br>  Defendant. | Case No. _____<br><br><br><br>COMPLAINT |

Plaintiff ERIC VAN DAM, by and through his attorneys, SMITH JADIN JOHNSON, PLLC, and NYE, STIRLING, HALE & MILLER, LLP, and for his Complaint in this matter against Defendant EAST METRO ASC LLC DBA HIGH POINTE SURGERY CENTER, and DOES 1-10, states and alleges as follows:

**NATURE OF THE ACTION**

1.    Plaintiff Eric Van Dam has a hearing disability stemming from congenital bilateral profound hearing loss. Because of his disability, Mr. Van Dam utilizes ASL interpreters and Video Remote Interpreting ("VRI") communication software to communicate effectively. Plaintiff is limited in the major life activity of hearing.

2. East Metro ASC LLC dba High Pointe and Does 1 through 10 (together, the "Defendant") discriminated against Plaintiff by violating the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), and Section 1557 of the Affordable Care Act ("ACA") resulting in significant access barriers at Defendant's facilities. Specifically, Plaintiff experienced difficulty and risk of harm when he was not provided an ASL interpreter or adequate VRI software to communicate with doctors at Defendant's medical facilities, making it difficult, if not impossible, for Plaintiff to access his medical care with Defendant. These violations exist due to a systemic failure to maintain accessibility features at Defendant's facilities identified in this Complaint.

3. Plaintiff brings this action individually to compel Defendant to cease unlawful discriminatory practices and implement policies and procedures that will ensure Plaintiff full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendant's healthcare services. Plaintiff seeks declaratory, injunctive, and equitable relief, compensatory damages, and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Title III of the ADA, 42 U.S.C. § 12101 et seq., Section 504 of the Rehabilitation Act, and Section 1557 of the Affordable Care Act ("ACA").

4. Plaintiff visited Defendant's facilities in Minnesota and was denied full and equal access as a result of Defendant's improper policy for persons with disabilities. Defendant denied Plaintiff equal access to its facilities by failing to provide appropriate and reasonable accommodations that would ensure effective communication, as required by the ADA, the Rehabilitation Act and Section 1557 of the ACA.

5. By failing to make its medical center accessible to Plaintiff and other hearing-impaired persons, Defendant, a public accommodation subject to Title III of the ADA, deprives

disabled persons of the full benefits of Defendant's healthcare services—all benefits it affords non-disabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III of the ADA is meant to redress.

6. Defendant has further demonstrated through its interactions with Plaintiff that Defendant's employees are not properly trained regarding civil rights, effective communication, hearing accommodations, privacy considerations, or how to interact with hearing-impaired individuals.

7. Defendant's discrimination sends a message that it is acceptable for medical providers to adopt policies, procedures, and practices that deprive hearing-impaired individuals of the opportunity to be full partners in their receipt of healthcare services.

8. The ADA expressly contemplates injunctive relief aimed at modification of a policy or practice that Plaintiff seeks in this action. In relevant part, the ADA states:

> Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods.

42 U.S.C. § 12188(a)(2).

9. Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

   a. Defendant take all steps necessary to adopt policies and procedures that bring its facilities into full compliance with the requirements set forth in the ADA and its implementing regulations in order to ensure that disabled person have equal access to healthcare;

   b. Defendant take all steps necessary to ensure that the effective communication barriers at Defendant's facilities do not reoccur; and

c. Plaintiff's representatives monitor Defendant's facilities to ensure the injunctive relief ordered pursuant to Paragraph 9.a. and 9.b. has been implemented and will remain in place.

d. Plaintiff's representatives monitor Defendant's facilities for a reasonable period of time in the future as proscribed by this Court to ensure the injunctive relief ordered pursuant to Paragraph 9.a., 9.b., and 9.c. has been implemented and will remain in place.

## PARTIES

10. Plaintiff Eric Van Dam is, and at all times relevant hereto was, a resident of Hennepin County, Minnesota. Plaintiff has congenital bilateral profound hearing loss causing deafness.

11. Plaintiff is a Medicare recipient, and his treatment at Defendant's facilities was, at least partially, paid for through Medicare.

12. Defendant East Metro ASC LLC dba High Pointe is a Minnesota corporation organized and existing under the laws of Minnesota with its headquarters at 1701 Curve Crest Boulevard, Stillwater, Minnesota, 55082.

13. Plaintiff received treatment at Defendant's facilities located at 8650 Hudson Boulevard, Lake Elmo, Minnesota, 55042.

14. Defendant's facilities are places of public accommodation as defined in 42 U.S.C. §12181(7)(G) and Defendant is thus subject to the requirements of the ADA and the Rehabilitation Act.

15. The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as Does 1 through 10, are unknown to Plaintiff at this time. Plaintiff will amend this Complaint to allege their true names and capacities when known.

Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in this Complaint.

16. Plaintiff alleges that Defendants, including Doe Defendants, and each of them at all times mentioned in this Complaint, were the alter egos, agents, employees, and/or employers of their Co-Defendants, and in doing the things alleged in this Complaint were acting within the course of such agency and/or employment and with the permission and consent of their Co-Defendants.

## FACTUAL BACKGROUND

**Plaintiff Has Been Denied Full and Equal Access to Defendant's Facilities**

17. Plaintiff visited Defendant's medical center located at 8650 Hudson Boulevard, Lake Elmo, Minnesota, 55042 on May 9, 2019, and June 13, 2019, for scheduled surgeries.

18. Plaintiff utilizes auxiliary aids for communication. At his visits to Defendant's facilities to receive medical treatment, Plaintiff encountered numerous accessibility barriers that made it difficult, if not impossible, to access his medical care. Those barriers include, but are not limited to:

- On May 9, 2019, when Plaintiff arrived for his surgery, he was not provided an interpreter. The interpreter had been requested by Plaintiff and his surgeon well in advance of the surgery. Plaintiff also requested an interpreter when he arrived that day, but the request was denied. Hospital staff tried to set up the VRI, but they were unable to use it due to connection and software issues, as well as a general lack of training. The failure to provide an interpreter and the faulty VRI led to Plaintiff's mother interpreting for him even though she is not a certified interpreter.

- Prior to the second surgery on June 13, 2019, Plaintiff called to request an interpreter well in advance of his appointment. When Plaintiff arrived, hospital staff informed him they did not contract an interpreter because they deemed VRI to be suitable, despite Plaintiff's request for a live interpreter, and the fact Plaintiff needed a live interpreter due to his limited ability to use his hands (the surgery was a carpel tunnel release). Further, there was no consultation with Plaintiff beforehand to confirm that VRI was an acceptable alternative to the requested live interpreter, failing to give primary consideration to Plaintiff's requested form of communication. Defendant also did not document in writing its reasons for not giving primary consideration to Plaintiff's requested form of communication. Again, Plaintiff had to ask his mother to interpret for him.

- Defendant also provided inadequate VRI software. The VRI provided had a duplicate connection that featured software that did not function adequately. Additionally, the staff was inadequately trained in the use of VRI. Specifically, hospital staff failed to put the VRI at an appropriate angle so that both Mr. Van Dam and hospital staff could see one another.

- After the visit on June 6, 2019, Plaintiff filed a complaint with the facility regarding the communication barriers he encountered. Unfortunately, the hospital failed to give any indication that it intended to update its policies so that similar accessibility violations would not occur in the future. Nor did it give any indication that hospital staff would be trained in the use of VRI.

19. As a result of Defendant's failure to ensure hearing accommodations for Plaintiff and denial of access and services, Plaintiff received services that were objectively substandard,

6

inaccessible, and inferior to those provided to hearing patients, and was subjected to discriminatory treatment because of his disability.

20. Despite this difficulty, frustration, and unequal treatment, Plaintiff will seek Defendant's healthcare services in the future due to the limited medical care options, the proximity of Defendant's facilities to his home, and Plaintiff's insurance coverage. Specifically, Plaintiff will have to return to Defendant's facilities and anticipates being required to do so in order to have additional medical care but is deterred from doing so due to the discrimination he has faced and expects to face in the future. Furthermore, Plaintiff intends to return to Defendant's facilities to ascertain whether those facilities remain in violation of accessibility standards.

## JURISDICTION AND VENUE

21. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

22. This Court has personal jurisdiction over Defendant because Defendant maintains its headquarters in Minnesota, has sufficient minimum contacts with Minnesota, or has otherwise purposely availed itself of the markets in Minnesota through the promotion, marketing, and sale of its services in Minnesota to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Specifically, Defendant is registered to do business in Minnesota and has been doing business in Minnesota.

23. Venue is proper under 28 U.S.C. § 1391(a) and (b)(2) because Defendant is subject to personal jurisdiction in this District. Defendant does substantial business in this District, and a substantial part of the events or omissions giving rise to these claims occurred in this District. Defendant engaged in the extensive promotion, marketing, distribution, and sales of the services at issue in this District.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE ADA, TITLE III

## [42 U.S.C. §§ 12101 et seq.]

24. Plaintiff restates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

25. At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181, et seq. was in full force and effect and applied to Defendant's conduct.

26. At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendant's conduct.

27. Congress enacted the ADA in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Pub. L. No. 101-336, § 2(b)(1), 1990 U.S.C.C.A.N. (104 Stat.) 327, 329 (codified at 42 U.S.C. § 12101(b)(1)).

28. At all times relevant to this action, Plaintiff has been substantially limited in the major life activity of hearing. Accordingly, he is considered an individual with a disability as defined under the ADA, 42 U.S.C. § 12102(2).

29. Defendant owns, leases, and/or operates a comprehensive system for healthcare services that are places of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F).

30. Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations." 42 U.S.C. § 12182(a).

31. Pursuant to Title III of the ADA and its implementing regulations, a public accommodation cannot deny participation or offer unequal or separate benefits to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A); 28 C.F.R. §§ 36.202.

32. Pursuant to Title III of the ADA and its implementing regulations it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

33. Qualified interpreters on-site or through video remote interpreting (VRI) services are auxiliary aids and services under the Title II regulations. 28 C.F.R. § 35.104. VRI is required to be a real-time, full-motion video and audio over a dedicated high-speed video connection that is on a display large enough to display the interpreter's face, arms, hands, and fingers, and the participating individual's face, arms, hands, and fingers, regardless of his or her body position. 28 C.F.R. § 35.160(d). The staff is required to be adequately trained in this technology. *Id*. Section 36.303 likewise defines "auxiliary aids and services" to include qualified interpreters, VRI services, or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing.

34. The hospital, as a public accommodation, is required to furnish these appropriate aids and auxiliary services to ensure effective communication with individuals with disabilities, like Plaintiff. 28 C.F.R. § 36.303(c)(1). The public accommodation cannot require the individual with the disability to bring another individual to interpret for him, like the hospital did here. *Id.* at subs. (c)(2).

9

35. Defendant discriminated against Plaintiff on the basis of his disability by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of its places of public accommodation, and equal opportunity to participate in and benefit from Defendant's healthcare services, in violation of the ADA.

36. As set forth above, absent injunctive relief, there is a clear risk that Defendant's actions will recur with Plaintiff and/or other hearing-impaired persons seeking Defendant's healthcare services.

37. Plaintiff is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## SECOND CAUSE OF ACTION

### VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

38. Plaintiff incorporates the allegations in the preceding paragraphs, as if alleged herein.

39. Plaintiff is an individual with a disability protected by Section 504 of the Rehabilitation Act and qualified to receive health services through Medicare. See 29 U.S.C. § 794(a); 45 C.F.R. § 84.3(j).

40. Defendant is a recipient of federal financial assistance from the Department of Health and Human Services and is subject to Section 504 of the Rehabilitation Act and its implementing regulations. See 29 U.S.C. § 794; 45 C.F.R. § 84.3(h).

41. Section 504 of the Rehabilitation Act provides that no qualified individual with a disability shall be subjected to disability-based discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).

42. Discrimination includes failing to "[a]fford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," or providing qualified handicapped persons with "an aid, benefit, or service that is not as effective as that provided to others." 45 C.F.R. § 84.4(b)(1)(ii)-(iii); see 45 C.F.R. §§ 84.52(a)(2)-(3).

43. Section 504 requires health programs or activities that receive federal financial assistance and that have at least fifteen employees to provide auxiliary aids and services to individuals who are hearing-disabled and use auxiliary aids. 45 C.F.R. §§ 84.52(b), (d). It further requires that the health programs provide appropriate auxiliary aids to qualified handicapped persons with impaired sensory, manual, or speaking skills where a refusal to make such provision would discriminatorily impair or exclude the participation of such persons in a program or activity receiving Federal financial assistance." 28 C.F.R. § 42.503(f). "Such auxiliary aids may include brailled and taped material, qualified interpreters, readers, and telephonic devices." *Id*.

44. Section 504 was implemented to "[e]nsure that communications with [Defendant's] applicants, employees and beneficiaries are effectively conveyed to those having impaired vision and hearing." 28 C.F.R. § 42.503(e).

45. A recipient may not directly or through contractual, licensing, or other arrangements, discriminate on the basis of disability. 45 C.F.R. § 84.4(b)(1).

46. Defendant's provision of healthcare services constitutes a program or activity receiving federal financial assistance and, as a recipient, it is required to ensure that both Defendant and its contractors comply with Section 504 of the Rehabilitation Act.

47. Defendant has failed and is failing to meet its obligation to provide hearing-impaired individuals an equal opportunity to use and benefit from its health care programs and

activities. In failing to provide deaf patients like Plaintiff with accessibility, Defendant has refused to provide the auxiliary aids and services necessary to provide such patients medical treatment in an equally effective and timely manner that protects their privacy and independence.

48. Examples of Defendant's inaccessible facilities for hearing-impaired individuals are listed in paragraph 18 above.

49. Because Plaintiff and other hearing-impaired individuals cannot independently access the medical facility, they must either find and rely on third party assistance, which intrudes upon the privacy of their personal medical and financial information, or forego accessing their critical healthcare altogether. Defendant's failure to provide equally effective accommodations to hearing-impaired patients puts their health at risk. This is especially pronounced in the failure to have ASL interpreters or adequate VRI equipment to allow Plaintiff and other deaf individuals the ability to effectively communicate with their healthcare providers.

50. As a result of Defendant's actions and omissions, Plaintiff and other hearing-impaired individuals have suffered and will continue to suffer irreparable harm in the form of discrimination and unequal access to Defendant's healthcare services. If there is no change in the status quo, Plaintiff and other hearing-impaired individuals will be denied their right to access and engage fully in the provision of their healthcare.

51. Defendant's failure to meet its obligations to accommodate hearing-impaired patients in an effective manner constitutes an ongoing and continuous violation of the ADA and the Rehabilitation Act, and their implementing regulations. Unless restrained from doing so, Defendant will continue to violate the ADA and the Rehabilitation Act. Unless enjoined, Defendant's conduct will continue to inflict injuries for which Plaintiff has no adequate remedy at law.

52. Defendant's refusal to accommodate hearing-impaired patients in an equally effective manner through the provision of alternative formats was done intentionally or with deliberate indifference to the protected rights of Plaintiff and other hearing-impaired individuals.

53. Plaintiff is entitled to injunctive relief, as well as reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

## VIOLATION OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

**[42 U.S.C. § 18116]**

54. Plaintiff incorporates the allegations in the preceding paragraphs, as if alleged herein.

55. Since March 2010, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.,* Pub. L. 111-148. Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, and affirmed as of June 12, 2020, apply to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services (the "Department").

56. Defendant participates in one or more Medicare and Medicaid healthcare plans with third-party payers and is a participating provider under Medicare and Medicaid. As a result, Defendant is a covered entity under Section 1557.

57. Section 1557 of the Patient Protection and Affordable Care Act prohibits discrimination on the basis of disability in any health program or activity, any part of which receives federal financial assistance, including credits, subsidies, or health insurance contracts. 42 U.S.C. § 18116; 29 U.S.C. § 794. The nondiscrimination standards under Section 1557 are at least as stringent as the standards under Section 504 of the Rehabilitation Act. 45 C.F.R. § 92.3.

58. The implementing regulations of Section 1557 prohibit discrimination of an individual on the basis of disability, *inter alia*, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. *See* 45 C.F.R. §§ 92.2(a); 92.103; and 92.105.

59. Where the regulatory provisions use the term "public entity," the term "covered entity" shall apply in its place. As applied to Section 1557 covered entities, the Title II regulations require them to "make reasonable modifications to its policies, practices, or procedures when such modifications are necessary to avoid discrimination on the basis of disability . . . For the purposes of this section, the term "reasonable modifications" shall be interpreted in a manner consistent with the term as set forth in the regulation promulgated under Title II of the Americans with Disabilities Act, at 28 CFR 35.130(b)(7)." *See* 45 C.F.R. § 92.105.

60. Discrimination includes failure by a covered entity to take appropriate steps to ensure communications with participants with disabilities are as effective as communications with participants without disabilities, including the failure to furnish appropriate auxiliary aids and services when necessary to afford an equal opportunity to participate in the services and activities of the entity. 45 C.F.R. § 92.202; 28 C.F.R. § 35.160.

61. Under 28 CFR § 35.160(b)(2), the type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used

by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. In determining what types of auxiliary aids and services are necessary, a public entity shall give "primary consideration" to the requests of individuals with disabilities. *Id.*

62. The Appendix to the ADA regulations also makes clear the public entity has a duty to ensure effective communications and establishes a required deference that must normally be given to a disabled person's personal choice of aid and service: "the public entity shall honor the choice [of the individual with a disability] unless it can demonstrate that another effective means of communication exists or that use of the means chosen would not be required under § 35.164. Deference to the request of the individual with a disability is desirable because of the range of disabilities, the variety of auxiliary aids and services, and different circumstances requiring effective communication." *Id*. pt. 35, App. A (alteration in original) (quoting 28 C.F.R. pt. 35, App. A (2009)).

63. As codified at 45 C.F.R., § 92.202, the "effective communication" provision of the Affordable Care Act states:

Effective communication for individuals with disabilities .

(a) A covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with the standards found at 28 CFR § 35.160 through § 35.164.

64. In turn, 28 C.F.R. § 35.164, "Duties", states, in pertinent part: "[t]he decision that compliance would result in such alteration or burdens must be made by the head of the public entity or his or her designee after considering all resources available for use in the funding and

operation of the service, program, or activity and must be accompanied by a written statement of the reasons for reaching that conclusion. In those circumstances where personnel of the public entity believe that the proposed action would fundamentally alter the service, program, or activity or would result in undue financial and administrative burdens, a public entity has the burden of proving that compliance with this subpart would result in such alteration or burdens.

65. Accordingly, to the extent that Defendant denied Plaintiff's choice of accommodation, Defendant's leadership was under a legal duty to contemporaneously document in writing the reasons why granting the request would "fundamentally alter the service, program or activity or would result in undue financial and administration burdens."

66. Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part." *See* 45 C.F.R. § 92.5.

67. Defendant's conduct constituted violations of Section 1557.

68. Defendant's conduct constitutes ongoing and continued violations of Section 1557. Unless restrained from doing so, Defendant will continue to violate Section 1557. This conduct, unless enjoined, will inflict injuries on Plaintiff.

69. Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act.

70. As a direct and proximate result of the foregoing, Plaintiff suffered the loss of a civil right and he suffered great mental anguish; and he will continue to suffer for a long time in the future; and Plaintiff was otherwise injured and damaged.

71. Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

## PRAYER FOR DECLARATORY JUDGMENT
## AND PROSPECTIVE INJUNCTIVE RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

A. Accepting jurisdiction of this case and declaring the Defendant's policies, procedures, and services are discriminatory and violate the ADA, the ACA and the Rehabilitation Act;

B. Requiring Defendant to alter the identified medical facility locations, and to make them accessible to and usable by individuals with disabilities to the extent required by the ADA, ACA and Rehabilitation Act;

C. Directing Defendant to evaluate its policies, practices, and procedures toward persons with disabilities for such reasonable time so as to allow the Defendant to undertake and complete corrective procedures at the identified medical facility locations above;

D. Mandating Defendant to expeditiously make all reasonable and appropriate modifications in their policies, practices, and procedures, to remove all communication barriers at the identified medical facility locations that are readily achievable and technically feasible as required by law, to ensure primary consideration is given to the communication method requested by a disabled individual, and to take all such steps as are reasonable and necessary to ensure that

persons with disabilities are no longer excluded, denied services, segregated, or otherwise treated differently and discriminated against;

E.  Mandating Defendant provide training to its employees regarding how to ensure primary consideration is given to the communication method requested by a disabled individual, and to take all such steps as are reasonable and necessary to ensure that persons with disabilities are no longer excluded, denied services, segregated, or otherwise treated differently and discriminated against;

F.  Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, including costs of monitoring Defendant's compliance with the judgment (*see Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, Case No. 2:16-cv-01898-AJS (W.D. Pa. Jan. 11, 2018) (ECF 191) ("Plaintiffs, as the prevailing party, may file a fee petition before the Court surrenders jurisdiction. Pursuant to *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986), *supplemented*, 483 U.S. 711 (1987), the fee petition may include costs to monitor Defendant's compliance with the permanent injunction."); *see also Access Now, Inc. v. LAX World, LLC*, No. 1:17-cv-10976-DJC (D. Mass. Apr. 17, 2018) (ECF 11) (same).

G.  Awarding such other and further relief as the Court deems necessary, just, and proper; and,

H.  Retaining jurisdiction of this case until the Defendant has fully complied with the orders of this Court.

Dated: May 6, 2022          Respectfully Submitted,

s/ Karly A. Kauf
Karly A. Kauf, Esq.
**SMITH JADIN JOHNSON, PLLC**
7900 Xerxes Avenue South, Suite 2020
Bloomington, MN 55431
Phone: (952) 236-4171
kkauf@sjjlawfirm.com

Benjamin J. Sweet
**NYE, STIRLING, HALE & MILLER, LLP**
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Phone: (412) 857-5350
ben@nshmlaw.com

Jonathan D. Miller
Alison Bernal
**NYE, STIRLING, HALE & MILLER, LLP**
33 W. Mission Street, Suite 201
Santa Barbara, CA 93101
Phone: (805) 963-2345
jonathan@nshmlaw.com
alison@nshmlaw.com

*Attorneys for Plaintiff Eric Van Dam*

## DEMAND FOR JURY TRIAL

Plaintiff ERIC VAN DAM hereby demands a trial by jury of all claims so triable in the above-referenced matter.

Dated: May 6, 2022

Respectfully Submitted,

s/ Karly A. Kauf
Karly A. Kauf, Esq.
**SMITH JADIN JOHNSON, PLLC**
7900 Xerxes Avenue South, Suite 2020
Bloomington, MN 55431
Phone: (952) 236-4171
kkauf@sjjlawfirm.com

Benjamin J. Sweet
**NYE, STIRLING, HALE & MILLER, LLP**
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Phone: (412) 857-5350
ben@nshmlaw.com

Jonathan D. Miller
Alison Bernal
**NYE, STIRLING, HALE & MILLER, LLP**
33 W. Mission Street, Suite 201
Santa Barbara, CA 93101
Phone: (805) 963-2345
jonathan@nshmlaw.com
alison@nshmlaw.com

*Attorneys for Plaintiff Eric Van Dam*